Received by DPRC  JAN 0 6 2010

STATE OF NEW HAMPSHIRE
DEPARTMENT OF EDUCATION

EXHIBIT

A

*In Re:  Student/Oyster River Cooperative School District*

*IDPH-FY-10-08-007*

DECISION

I.      Introduction.

A Pre-Hearing Conference was held on October 14, 2009 and a Pre-Hearing Order issued

at that time.  A Motion for Partial Dismissal was filed and a ruling issued dismissing Paragraph

1-6 of the Request for Due Process.  As such, the hearing went forward on issues No. 7 and 8 of

the Request for Due Process.  The matter was heard on November 17, 209 and November 18,

2009 with the Parents presenting first.  The crux of the matter involves the School District's

contention that the Student has made sufficient progress to graduate in January, 2010.  It has an

adequate number of credits for graduation.  The Parents contend that the Student has not made

sufficient progress to graduate in January, 2010 and should graduate in June, 2010.

II.     Procedural Violations.

There were no allegations of any procedural violations in this matter.

III.    Discussion.

The first witness called by the Parents was Dr. Eileen Spitzer who is the Student's

psychiatrist.  She has been licensed in New Hampshire for 17 years and specializes in child and

adolescent psychiatry.  Dr. Spitzer has been treating the Student since spring 2002.  The Student

suffers from Aspergers Disorder (PDD), with significant anxiety issues related to Aspergers.

The Student's difficulties include social communication and relations and interpretation of social

cues which impact all aspects of the Student's functioning.  According to Dr. Spitzer the Student

- 1 -

cannot negotiate basic aspects of a functioning young adult. The Student cannot self advocate, ask for assistance, interpret statements of teachers or adults and lacks perspective. The Student's thinking is very concrete and rigid. Essentially, the Student lacks the ability to think in the abstract and the Student's perspective is always strictly black and white. As such, the student avoids social situations as well as any setting in which the Student is not totally familiar. Dr. Spitzer has been involved with the team on a contract basis and has attended meetings and provided consultation. The District also contracted with a Dr. Schmidt and paid Dr. Spitzer to consult with Dr. Schmidt. There was a psychological evaluation (P15) by Dr. Corriss which was provided to the team. Dr. Spitzer indicated that Dr. Corriss' evaluation confirmed what Dr. Spitzer had already found. While the Student has developed some trust in dealing with service providers the disabilities still exist. The Student needs a structured support program to develop skills to compensate for the Student's anxiety. The Student is very comfortable at the local high school and wants to continue to develop skills there. With respect to the possible goal of attending the University of New Hampshire, Dr. Spitzer found that it was a realistic goal for the Student however, the Student must increase skills to be able to manage life at UNH. In Dr. Spitzer's opinion, the Student will not be ready for college by January, 2010 and the Student is not ready to leave high school at this time and lose the supports that are in place. She is optimistic that this will not be the case by the end of June and that the Student will be ready by then. P4 is a letter from Dr. Spitzer relative to a goal development around the Student's refusal of services which has been an ongoing issue. Dr. Spitzer developed the goal however, it was not included in the IEP. The Student did participate in track and cross-country in 2009 which was a huge milestone. The District hired Matthew Fry to work with the Student on social issues and Mr. Fry wrote goals for the IEP and in Dr. Spitzer's opinion, the Student was not able to meet

those goals. With respect to the issue of taking a Spanish course, the District proposed that it be taken online/off site and Dr. Spitzer totally disagrees with this proposal and believes it would be counterproductive.

On cross-examination, Dr. Spitzer acknowledged that she is not certified in special education or as a teacher. She further acknowledged that the Student has come to her office for sessions not accompanied by anyone six or seven times since May, 2009. SD440 is a progress note for Dr. Spitzer's file referencing a session in which the Student was refusing to return to the high school. However, the Student realized that the Student may want to in fact return and did so, and in Dr. Spitzer's opinion this was tremendous progress. (i.e., the Student being able to change the Student's position regarding returning to high school). There is further discussion on cross-examination regarding the Student obtaining a part-time job and whether or not this was beneficial. Dr. Spitzer felt that it would be beneficial to build confidence. There is also discussion about the Student attending a spaghetti dinner with the track team however, Dr. Spitzer indicated that the Student only attended because the Student's brother was attending and that the Student would not have attended without the brother.

LB, the Student's mother testified as the next witness. The Student's strengths include intelligence, thirst for knowledge, computer work, sports, relationship with father and effort to complete school work. Deficits include social isolation, limited interaction with peers, inability to independently enter a store or attend a school dance, and lack of friends. The Student does not have conversations with peers and has a very limited ability to seek assistance from a service provider to review material prior to testing. P19 is a progress report from the IEP. The mother reviewed the goals referenced therein and indicated that the Student has not met those. The Parents fear that the Student will become a housebound adult and that if the Student were to

- 3 -

enroll at UNH in January, 2010, the Student would fail and end up at home. The Student wants to remain at the high school and complete the school year and graduate in June. The mother feels that the Student is not ready to graduate in January. The mother agrees that taking the Spanish course online (another year of a foreign language is required for admission to UNH), would be unsuccessful and would be too isolating. The Student needs to complete the Spanish course at the high school and a laboratory science course in order to graduate and should graduate in June and not January.

On cross-examination, the mother agreed that she has not observed the Student's peer relationship/interactions at the school and she acknowledged that UNH does make exceptions with respect to the criteria for admission, but in her opinion the Student's disability does not fall under any of the exceptions.

Dr. Pierre Schmidt testified by telephone. He has been a licensed psychologist in New Hampshire for over twenty years and began working with the Student in April, 2009. He provides cognitive behavior therapy to the Student and he has attended IEP meetings. In Dr. Schmidt's opinion the Student's social anxiety is a primary problem and the Student lacks the necessary social skills to deal with situations outside of the Student's safe zone. The Student is uncomfortable with age group peers or strangers and fears embarrassment or humiliation which can immobilize the Student in dealing in social situations. The Student cannot perform mundane daily tasks such as going to the store, pumping gasoline, talking on the telephone, etc. P1 is Dr. Schmidt's report dated September 30, 2009. Wherein, it is indicated that the Student cannot make "small talk" with peers as the Student is fearful of being judged/embarrassed. Dr. Schmidt's Affidavit is at SD63. Therein, it is indicated that the Student's progress this school year has been "really good" and that Dr. Schmidt was pleased with the progress. The Student

has matured however, the Student is back in a familiar place (the local high school). Dr. Schmidt

felt that UNH is a realistic goal. He further felt that the Student would benefit by graduating in

June and that it would be very difficult for the Student to make adequate progress by January.

Dr. Schmidt felt that any conflicts between the Parents and the School District team have no

bearing on his opinion regarding the Student's progress.

On cross-examination Dr. Schmidt confirmed that his Affidavit is accurate and that he

does not have a degree in education or special education. He further acknowledged that he

provided minimal input at team meetings and that the goal that he drafted for the IEP SD219 was

adopted by the team. Dr. Schmidt has never seen the Student in a classroom setting or in the

community. Dr. Schmidt further acknowledged that the Student will also have anxiety to some

extent. He further agreed that there is no guarantee of success at UNH.

Gail Luerssen, Transition Specialist/Consultant testified as the final witness for the

Parents. She was hired by the District to work with the Student and began in September, 2008.

She attended team meetings, did an assessment and presented it to the team. She also wrote a

draft IEP. She prepared a questionnaire for the team/school district personnel and it was never

completed. She found her results to be valid. In her opinion the Student needs a transition

program to learn independent skills and function on the outside world. The Student will not be

ready by January to function independently. P9 of the draft transmission goals prepared by Ms.

Luerssen and SD81 were the revised transition goals which were presented to the team. She

thought that these would be incorporated into the IEP, but they were not. She stated that the IEP

lacks goals for daily living and community resources. She reviewed the proposed IEP and found

that there were a number of areas that were deficient as compared to her draft transition goals

(P9). She compared the transition plan benchmarks between the 2008/2009 school year and the

- 5 -

2009/2010 school year and felt that many of the benchmarks were not met in 2008/2009 yet were not contained in any 2009/2010 transition IEP. In her opinion it would not be appropriate for the Student to graduate in January and the transition IEP is not appropriate. There was no significant cross-examination of this witness and the Parents rested at the close of Ms. Luerssen's testimony.

Matt Fry testified as the first witness for the School District. He is a certified therapeutic recreation specialist and is licensed in the State of New Hampshire. He is employed by Northeast Passage. His Affidavit is at SD61. Mr. Fry was involved with the Student's IEP beginning the fall, 2008. Initially, the Student was not interested in working with Mr. Fry. Direct services began being delivered in January 2009. The Student was very concerned about being seen in public with Mr. Fry and was fearful of assumptions that peers may make. Mr. Fry and the Student began working again in July, 2009 after a break of several months. By that time, the Student had changed and was not so resistant to meeting with Mr. Fry in public. The two went on a fishing trip with a co-worker of Mr. Fry's and there was more interaction in public (e.g., going to a Chinese restaurant). The Student had a medical prescription change over the summer and that may have contributed to the Student's change in attitude. Mr. Fry provided input regarding the IEP and SD223 are goals and objectives that he wrote. Mr. Fry reviewed the transition skills questionnaire (SD54) and felt that many of the skills were well below the Student's capabilities and that the Student would be insulted by some of the items on the checklist. Mr. Fry felt that the 2009/2010 IEP (SD27) relative to transition goals is appropriate and would provide the Student with some educational benefit. The Student and Mr. Fry participated in a number of activities around the UNH campus. SD 222 is an updated report by Mr. Fry indicating that the Student had a very productive summer. Mr. Fry shared his feelings with the family. SD 215 is an e-mail from the mother indicating that she was thrilled that Mr.

Fry was working with the Student. At the end of the summer the Student wanted to take a break for a couple of weeks so that the Student could get back into the high school routine and the two did so resuming services in later September. Mr. Fry felt that the Student was very conversation and had little anxiety about meeting with Mr. Fry when they resumed services. By October, the Student was making strong progress in keeping appointments and exploring new activities. The Student also called Mr. Fry several times and e-mailed him regularly. Mr. Fry gave a number of examples of social interactions that he participated in with the Student including a number of them at UNH as well as the Dollar Store and a fast food restaurant at which the Student went in, ordered and paid without assistance. The Student also pumped gas on the Student's own and went into the station and paid. Overall, Mr. Fry was very pleased with the Student's progress and felt that the Student could undertake independent skills by January, 2010. The Student has told Mr. Fry that the Student is more equipped to handle social situations. If the Student transitioned to UNH the Student could still access Mr. Fry's services. Mr. Fry felt that the Student's capabilities have been underestimated.

On cross-examination, Mr. Fry acknowledged that the Student does not participate in social activities with peers and is unable to "hang out" with peers and may never had done so unassisted. Mr. Fry acknowledged that the Student only sent him 1 e-mail and that in all of the activities discussed by Mr. Fry there was a never a peer involved.

Amy Clark testified as the second District witness. She is a rehabilitation counselor working on things such as job skills, resume skills, job shadowing and college applications. She attended IEP meetings and provided input, she attended the June 3, 2009 IEP meeting and after that meeting, began looking for volunteer opportunities for the Student. She no longer works with the Student because she left Easter Seals for another job in July, 2009. She said that the

- 7 -

Student participated in an interview with the SPCA in Stratham for possible volunteer position and that the Student acted appropriately.

On cross-examination, Ms. Clark acknowledged that the Student has a lot of anxiety and that she was in the community with the Student only two times in the eighteen months that she worked with the Student. She acknowledged that there was one job shadowing effort at Strawberry Bank which she and the Student walked around and left. She further acknowledged that the IEP calls for five job shadowings to occur and that this number was not met. In one incident she and the Student went to a McDonald's restaurant and the Student refused to enter. Ms. Clark has never seen the Student interact with a peer and has had no contact with the Student since July. She did not assist the Student in preparing a resume and acknowledged that the Student only had the one interview in the eighteen months that she worked with the Student. In addition, she acknowledged that the SPCA did not offer the job to the Student and that the SPCA insisted that there be a one to one aide if the Student was to be employed even as a volunteer. Finally, she indicated that she did not believe that the Student was academically ready to enter UNH in the fall, 2009.

Amy Whicher (Therrien) Special Education Coordinator for the high school since 2003 testified as the next District Witness. She is certified as a speech/language pathologist, has a teaching certificate and is certified as the Special Education Administrator. She has known the Student for past two school years and was also involved in some meetings at the Student's prior placement. She was involved in the IEP process for the 2009/2010 IEP. She is also familiar with the 2008/2009 IEP and its transition plan. She felt that the two transition plans are similar but not identical. She felt that the transition plan for 2009/2010 is more extensive than the previous year's. There were approximately five meetings to develop the IEP and Ms. Therrien

felt that the mother attended all meetings and had a full opportunity to participate. SD34 contains the transition goals and services in the IEP for 2009/2010. In her opinion, it provides for some educational benefit for the Student. Ms. Therrien indicated that the Student must be successful in track because she has not heard any complaints, and then she indicated that the Student is a good team member. In Physics class the Student asks many questions and also does so in English. The Student works with another Student in the food class in a cooking lab. Ms. Therrien felt that there appear to be positive peer relationships in these classes. With respect to the transition questionnaire, Ms. Therrien indicated that three staff members did complete it, but it never reached Ms. Luerssen. Her only observations of the Student were in hallways or seeing the Student order lunch, although, the Student does say hello to her when they interact. She felt that the Student is ready to transition out of high school.

On cross-examination, Ms. Therrien acknowledged that SD1 (the 2008/2009 IEP), at page 23 provides for the transition plan which includes a year long Spanish class, yet the 2009/2010 IEP calls for the Student to complete education in January, which would not allow for the full year class. She did acknowledge that the IEP that was actually offered provides for additional Spanish instruction. It is also clear to the Hearing Officer that the District agreed that the Student would have a full year of Spanish and that the proposal to graduate the Student in January would not allow for it.

Sandy Devins, Transition Coordinator testified as the next District witness. Her Affidavit is at SD539. She met with the Student on September 21, 2009, and the Student agreed to meet with her the following Friday however, the mother refused to allow the meeting to occur. Subsequently, there was an agreement that if Dr. Schmidt okayed the meeting, then the meeting could take place and Dr. Schmidt did so. At the meeting the Student was friendly had a good

- 9 -

sense of humor and made good eye contact. The Student went to the guidance counselor's office to discuss college and everything went well, according to this witness. Ms. Devins meets with the Student one hour every Friday in addition to a study skills room. The Student uses her e-mail to confirm the Student's appointments and in Ms. Devins' opinion the Student advocates well. She gave an example of the Student coming up with an alternative process to solve a physics problem. She felt that the 2009/2010 transition plan would provide the Student with educational benefits and that the Student makes progress across the board. Finally, she indicated that the Student is ready to graduate in January. On cross-examination, Ms. Devins acknowledged that the Student has one friend in one class. She further acknowledged that she met with the Student approximately three hours before preparing her Affidavit and that she has never seen the Student in the community or with a group of peers and finally acknowledged that she does not know the Student very well.

Meredith Sumner Nadeau, Director of Instruction for the School District testified as the last witness. She oversees the special education programs in District. She began this position in July, 2009 and previously was the Director of Special Education beginning July, 2008. She attended team meetings and was involved in meetings relative to amendments to the IEP. She felt that the mother participated meaningfully in the team meetings. The issue of transition to UNH first became an issue in June, 2009. She indicated that the Student initially did not want to return to the high school but would if required to. The Student does not need any additional credits to graduate. However, she acknowledged that the team agreed to extend the education to January because the Student may gain some additional benefit. There was no significant cross-examination.

The case was submitted at the conclusion of Ms. Nadeau's testimony.

- 10 -

IV.    Request for Findings and Rulings.

Both parties submitted requests for Findings of Fact and Rulings of Law.  The Parent's Request for Findings of Fact are ruled upon as follows:  all requests are granted, except Nos. 8, 11, 26, 28 and 33 which are neither granted nor denied to the extent that they are inconsistent with the decision they are determined to be denied.  The Request for Rulings of Law are all granted.  The School District's Request for Findings of Fact are all granted except Nos. 4 and 5 which are neither granted nor denied (see above).  The Request for Rulings of Law are all granted except for Nos. 27, 29 and 30 which are denied.

V.    Decision.

The Hearing Officer is persuaded that the Student should be allowed to matriculate until June, 2010 and graduate at that time.  The District made a commitment to provide a full year for the Spanish course and graduation in January, 2010 would not allow that to occur.  In addition, the physics lab/science class must be completed in order to meet the Student's needs.  The transition goals outlined by Gail Luerssen should be fully incorporated into the IEP.  While there appears to be some discrepancy in the testimony relative to the Student's abilities to socially engage with peers and in everyday out of school activities relative to the transition plan, it is clear to the Hearing Officer that the Student has virtually no interaction with peers either in or out of school.  In addition, the transition plan goals and objectives have not been met including independent living goals, community participation goals, prevocational goals, vocational goals such as securing employment.  Under the circumstances the Hearing Officer finds in favor of the Parents and Orders that the Student be allowed to complete the Spanish and Physics classes with the Student's peers at the local high school and that the transition goals recommended by Gail Luerssen be implemented in the IEP.

- 11 -

VI.    Appeal Rights.

If either party is aggrieved by the Decision of the Hearing Officer set forth above, either party may appeal this Decision to a Court of appropriate jurisdiction. The Parent has the right to obtain a transcription of the proceedings from the Department of Education. The District shall notify the Commission of Education when either the District or the Parent seeks judicial review of the Decision.

VII.    Statement of Compliance with ED-1128.22 (b).

If neither party appeals this decision to a Court then the District shall within ninety (90) days provide to the Office of Legislation and Hearing (Department of Education) and the Hearing Officer a written report describing the implementation of this Decision and provide a copy to the Parents. If the Parents do not concur with the District's report, the Parents shall submit their own report through the Commission of Education.

**SO ORDERED**:

Dated:  _01/05/10_

John P. LeBrun, Esquire
Hearing Officer